526 A.2d 330

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John HARVEY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 24, 1986.

Decided May 27, 1987.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Harriet Brumberg, Philadelphia, for appellant.

Pamela Pryor Cohen, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal by the Commonwealth from an order of the Superior Court reversing the criminal convictions of John Harvey, the appellee herein, and granting him a new trial.[1] Harvey had been tried and convicted in the Court of Common Pleas of Philadelphia County of first-degree murder and possessing an instrument of crime. The case was heard by a judge sitting without a jury, who later sentenced the defendant to life imprisonment for the murder and to a concurrent prison term of two and a half to five years for the companion conviction. We granted review to consider the Commonwealth's assertion that the Superior Court erred in granting a new trial on the ground that the prosecution had engaged in prejudicial misconduct during the course of trial.

In March of 1983 John Harvey was charged with murder, voluntary manslaughter and possessing an instrument of crime, in connection with the strangulation death of one Denise Madison. The matter came on for trial in August, 1983, at which time the defendant waived his right to a jury

---

1. The Commonwealth, having unsuccessfully petitioned the Superior Court to grant reargument, states that the instant appeal is from the order denying that request. We recognize that this statement of the order appealed from was designed to demonstrate that the petition for allowance of appeal was timely by virtue of Pa. R.A.P. 1113. However, we must point out that the actual appeal is from the order reversing the judgments of sentence and granting a new trial; it is thus misleading for the appellant to say that the "order in question" is the one denying reargument.

trial and elected to have the case heard by the trial judge sitting as a jury.

The Commonwealth's evidence showed, *inter alia*, that on the afternoon of February 4, 1983, the body of Denise Madison was found in the bedroom of quarters she had shared with Harvey. When the police arrived at the scene they also observed that the bedroom was in a state of great disarray and that numerous small glassine bags were scattered about. Statements from neighbors led the police to seek Harvey, but they did not succeed in apprehending him until over two weeks later. Dr. Halbert Fillinger, assistant county medical examiner, testified that the cause of Ms. Madison's death was strangulation. He further stated that his examination of the body disclosed grooves on the victim's neck and extensive hemorrhaging in the neck area. According to Dr. Fillinger, the victim's neck had been subjected to a force so severe that it halted her airflow, as well as the flow of her venous and arterial blood.

The defendant testified in his own behalf, and admitted that he had caused Ms. Madison's death by wrapping a strap around her neck and holding it there. He also admitted that he avoided the police when they came to the scene shortly after the killing, and that he instead opted to observe their activities from the vantage point of a nearby roof. After watching the police remove Ms. Madison's body, the defendant went to a hotel. About sixteen days later he surrendered to the police. Despite those admissions, he contended that Ms. Madison's death was accidentally caused as a result of his trying to stop her from choking on a glassine bag of heroin she had swallowed. That account of the death was inconsistent with testimony from Dr. Fillinger that he found no such bag or other foreign agent in the victim's system when he examined her soon after her death.

During cross-examination of the defendant, the prosecutor asked him if he had read a written, out-of-court statement of a certain third person representing that the defendant had admitted murdering the victim. The court sus-

tained an objection to the question. In addition, the prosecutor frequently framed his questions to the defendant as to impute to him various negative traits of character. For example, the defendant was asked about his being "stealthy," a "con," a "deceiver," and a "fast and slick" talker. As to the above line of cross-examination the court also sustained objections from defense counsel. However, the prosecutor was allowed, over objection, to elicit from Harvey the fact of his having undergone treatment for drugs, even though there was no prior evidentiary predicate to justify that inquiry.

In the course of final argument, the Commonwealth's attorney more than once stated to the court that the defendant had lied in his testimony. Indeed, the prosecutor went so far as to assert that because unspecified evidentiary elements were missing from the case, such could only mean that the defendant did not tell the truth. The prosecutor also stated, during closing argument, that the victim's young child had been forced to watch his mother die at the hands of the defendant, and that the child would go through life with nightmares of the event. There was no evidence that the child witnessed the actual killing; nor does the record clearly indicate whether or not he was even home at the time. At another point in his closing argument, the prosecutor theorized that the defendant committed the killing while in a paranoiac state fired by a hunger for heroin. An objection to that statement was sustained on the ground that there was no evidence of the defendant being a heroin addict.

After the trial court had rendered the guilty verdicts mentioned at the outset of this opinion, the defense filed post-trial motions in arrest of judgment and for a new trial. Pursuant to those motions, the defendant claimed that the evidence was insufficient to sustain the convictions, and in the alternative, that he was entitled to a new trial because the prosecutor had engaged in misconduct which denied him a fair trial. When those motions were denied and the judgments of sentence entered, the defendant appealed to

the Superior Court. He there raised the same two claims he had pressed below.

The Superior Court rejected the defendant's contention that the Commonwealth's evidence was insufficient to sustain the convictions. However, the Superior Court agreed with his assertion that he had been denied a fair trial because of prosecutorial misconduct, having found such in some of the cross-examination of the defendant and in some of the prosecution's closing arguments. 345 Pa.Super. 237, 498 A.2d 378 (1985). In deciding the case, the Superior Court gave express recognition to the well-established principle in our jurisprudence that where a criminal case is tried before a judge sitting without a jury, there is a presumption that his knowledge, experience and training will enable him to disregard inadmissible evidence and other improper elements. *E.g., Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Batty,* 482 Pa. 173, 393 A.2d 435 (1978); *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975). Nevertheless, the Superior Court was of the view that the prosecutorial misconduct in this instance was so serious there should be no presumption that it did not improperly impact on the trial judge's decisional process. After equipping itself with that conclusion, the Superior Court proceeded to hold that the Commonwealth had the burden of establishing that the prosecutorial misconduct was harmless beyond a reasonable doubt and had failed to meet the burden.

The Commonwealth petitioned this Court for an allowance of appeal, contending that the Superior Court should have applied a presumption that the trial judge in the case rendered his verdict uninfluenced by the alleged prosecutorial misconduct. The defendant, Harvey, has not sought review of the Superior Court's determination that the trial evidence was sufficient to sustain the verdicts entered against him.

■ We share the Superior Court's disapproval of the prosecutor's blatant attempts to distort the fact-finding process by resorting to highly unethical practices in an

effort to prejudice the fact finder. Unquestionably, if a lay jury had returned the verdicts under these circumstances, they would not be allowed to stand. *E.g., Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971). We also recognize that jurists are human and therefore subject to the failings of human nature. However, their training and experience in assessing the competency and the relevance of proffered evidence equips them to be more critical and judicious in their evaluation.[2] Thus we will not *assume* that a verdict rendered by a jurist was influenced by these extraneous prejudicial remarks and comments, rather it must be demonstrated by the record that the verdict was indeed the product of that corrupt source. Where as here the weight of the competent evidence, much of it uncontroverted, clearly supports the verdict there can be no legitimate basis for assuming that it was tainted by the prosecutorial misconduct.

Section 2502(a) of the Crimes Code states that "[a] criminal homicide constitutes murder of the first degree when it is committed by an *intentional killing* " (emphasis added). 18 Pa.C.S. § 2502(a). The phrase "intentional killing" is statutorily defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). This Court has held that a "willful, deliberate and premeditated killing" is one which is accompanied by a specific intent on the part of the perpetrator to bring about the death of the victim. *E.g., Commonwealth v. Meredith,* 490 Pa. 303, 416 A.2d 481 (1980); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976).

■ As noted, the defendant admitted on the witness stand that he killed the victim by wrapping a strap around her neck and holding it there. From the testimony of the

2. As noted, the trial judge in this case sustained a defense objection in almost every instance that one was made regarding the prosecutorial misconduct described herein. Those rulings demonstrate that the judge was effectively aware of the improprieties resorted to by the prosecution.

assistant county medical examiner it was reasonable for the trier of fact to conclude that the defendant's act was done with severe and violent force. Furthermore, the evidence as to the disarrayed condition of the room where the body was found reasonably supports a conclusion that the victim had been involved in a violent struggle before being killed. The element of specific intent to kill is one that can be proven from the circumstances of an event. *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973). And, if a deadly force is knowingly applied by the actor to the person of another, the intent to take life is as evident as if the actor stated the intent to kill at the time the force was applied. *Commonwealth v. Meredith, supra.* Certainly, tightening a strap around a person's neck, with the force and violence indicated by the evidence here, was sufficient to permit a finding of a specific intent to kill. *Commonwealth v. Johnson*, 459 Pa. 141, 327 A.2d 124 (1974).

In addition to an assessment of the acts themselves, appellant's own version at trial, in view of the contradiction offered by the medical evidence, would have justified the conclusion of intent to kill. Appellant admitted that he placed a strap around the victim's neck and applied the pressure that ultimately resulted in her death. His explanation for this conduct was that he sought only to prevent her from choking on a glassine bag which she had swallowed. That explanation was seriously undercut by the pathologist's testimony that no such substance was found in the body of the deceased. Thus, the factfinder's rejection of the proffered exculpatory evidence concerning the defendant's intent was obviously justified by very competent evidence to the contrary.

As an additional matter, the defendant admitted at trial that he deliberately eluded the police when they came to his residence to investigate the killing, and that he concealed his whereabouts from them for over two weeks thereafter. It is a well-settled rule of law that if a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law en-

forcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred. *Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Osborne,* 433 Pa. 297, 249 A.2d 330 (1969); *Commonwealth v. Coyle,* 415 Pa. 379, 203 A.2d 782 (1964). This is an additional basis to buttress the acceptance of the medical evidence that the version relating to the swallowing of a glassine bag was merely a fabrication to hide his guilt.

We therefore are satisfied that our case law, as provided in *Davis, Batty* and *Green,* governs this matter. The prosecutor's misconduct may be dealt with in another forum. There is, fortunately, no need to disturb the verdicts for that reason.

Accordingly, the order of the Superior Court is reversed; the judgments of sentence are reinstated.