J-A17026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MALIQUE SHERRILL | |
| Appellant | No. 2284 EDA 2015 |

Appeal from the Judgment of Sentence July 14, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013030-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED SEPTEMBER 22, 2016**

Malique Sherrill appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County.  After our review, we affirm.

Sherrill was charged with Forgery-Alter Writing,[1] Conspiracy,[2] Theft by Unlawful Taking-Moveable Property,[3] and Receiving Stolen Property[4] as a result of a "check-kiting" scheme that occurred in 2013.  A waiver trial was held before the Honorable Sierra Thomas Street; the court found Sherrill

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4101(a)(1).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 3925(a).

guilty of Receiving Stolen Property; the court acquitted Sherrill of the remaining charges.[5]

At trial, Viola Banks, custodian of records at American Heritage Federal Credit Union ("AHF"), testified with respect to Sherrill's account. She stated that, based on information she received from South Division Credit Union in Illinois[6] ("SD"), she investigated Sherrill's AHF account in Philadelphia. Banks determined that six checks, amounting to approximately $9,500, had been deposited at SD into Sherrill's account on six different days, the funds were successfully withdrawn on the days the checks were deposited, and the checks were ultimately returned unpaid. N.T. Trial, 7/9/15, at 19, 30-35.

Banks testified that Sherrill's account statement, Commonwealth Exhibit C-4, indicated that the multiple withdrawals were made on the same days as the deposits were made in Illinois. *Id.* at 41-42, 45. She noted, however, that none of the checks was endorsed, that she had no idea who made the deposits, that some of the withdrawals were made in Illinois, that she did not know who made the withdrawals in Illinois, and that at least two of the withdrawals were made in the Philadelphia area. *Id.* at 45-47.

_____

[5] Sherrill was convicted of the charges of receiving stolen property arising out of the Philadelphia withdrawals. The trial court acquitted Sherrill of the remaining charges, concluding that Sherrill was not responsible for actions and transactions that occurred in Illinois. N.T. Trial, 7/9/2015, at 79.

[6] AHF and SD participate in nationwide "shared branching," which allows credit union members to access their accounts at different locations "as if they were in their home branch." N.T. Trial, 7/9/15, at 30.

On December 28, 2013, Sherrill made two separate withdrawals, one from an ATM at the Fox Street branch and one at AHF's Hunting Park branch, from the teller, for $580. N.T. Trial, 7/9/15, at 75-76. With respect to the latter withdrawal, the Commonwealth introduced a surveillance photograph from the teller window that correlated to the date, time and place of withdrawal on Sherrill's account. *Id.* at 37-40. Banks also testified that the checks that were deposited had the business name of "All Star" with an address of 389 William Latham Drive, in Bourbonnais, Illinois, but she did not know whether that was a legitimate business. *Id.* at 47-48.

Sherrill's co-defendant/sister, Linda Sherrill ("Linda"), also testified for the defense. She stated that because she was recently unemployed she approached a group she found on the internet, "504 Boys," about getting money. Although unsure about the group's legitimacy, when the money appeared in her brother Sherrill's account, which she had access to, she thought the business was legitimate. N.T. Trial, 7/9/15, at 57-59. Linda testified that she told Sherrill her friend was depositing money into his account on a certain date and asked him to withdraw it for her, and he agreed. *Id.* at 57. She also testified that Sherrill never questioned her about the source of the funds and that he did not know that the funds originated from an illegal source. She also stated that she was not completely upfront with her brother, but that she had taken care of him since he was ten years old and she would not put him in a compromising situation. *Id.* at 59-60. She testified on direct examination:

- 3 -

Q: And what did you tell him to get him to withdraw[] the money?

A: I just told him a friend of mine was putting some money in his account and I asked him would it be okay and he said yeah and I told him that when the money [came], could he get it out for me and he said he didn't see no problem with that.

* * *

Q: Did he have any idea that the money was coming from anywhere but a legal source?

A: He never really questioned me. No. I really didn't know.

Q: You didn't know? Why did you ask him to do this for you?

A: Just greed. I really don't have an answer. I'm just, you know, just something I did and it was just greed at the time. I had lost my job and it was really hard for me and, you know, and he said that I could make money and, you know, I wouldn't be in trouble and I mean—

Q: Who said you could make money?

A: When I was on the internet. I got these guys from off the internet and, you know, they said it was okay.

Q: Who were these guys?

A: They['re] called the 504 Boys.

*Id.* at 57-59. Linda also testified that she believed Sherrill did not question her about the source of the funds because "I'm his sister and, I guess, you know, I take care of him all his life. I mean, you know, I would never put him in any harm's way." *Id.* at 60. When asked why, knowing she was a co-defendant, she decided to testify, she stated: "Because I felt I had to. I mean, I'm not saying he's an innocent guy. I'm not saying he's an angel or nothing, but he didn't do this, and I just felt like, you know, I had to do this." *Id.*

Sherrill also testified. He stated that he trusted his sister, and had no reason to question her: "My sister never had a record. So why would I question her. . . . All I knew was my sister asked me can you get the money out for me or whatever. I'm like no problem. I went and did that for her like any person would do for their sister or brother or mother or father." *Id.* at 73-74. Sherrill acknowledged on cross-examination that he knew his sister was unemployed at the time. *Id.* at 77.

Following conviction, the court sentenced Sherrill to 6 to 12 months' imprisonment and ordered him to pay $4,000 in restitution. Sherrill filed a motion for reconsideration of sentence. The court granted the motion, vacated Sherrill's sentence and resentenced him to two years' reporting probation with no restitution. Sherrill filed a post-sentence motion, claiming the verdict was against the weight of the evidence. The court denied the motion, and Sherrill filed a notice of appeal. The court ordered Sherrill to filed a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), which Sherrill timely filed.

Sherrill raises the following claims for our review:

1.    Was not the evidence insufficient to support [Sherrill's] conviction for receiving stolen property where the Commonwealth failed to establish that [Sherrill] knew, should have known, or believed that the money he withdrew from his own American Heritage Federal Credit Union bank account was stolen money, as there was no evidence that the money he withdraw was stolen, and it was undisputed that once [Sherrill] withdrew the money he gave it all to his sister?

2.    Did not the trial court err by allowing the introduction of inadmissible hearsay evidence through Commonwealth witness

Viola Banks consisting of a letter written by Ms. Banks to the Philadelphia Police Department in anticipation of litigation, with attached copies of checks deposited at a bank in Illinois for which Ms. Banks was not the custodian of records and about which she had no personal knowledge?

3. Did not the trial court err by denying [Sherrill's] post-trial motion requesting a new trial, as the verdict was against the weight of the evidence where the Commonwealth failed to establish that [Sherrill] engaged in any criminal activity, merely demonstrating that [Sherrill] withdrew money from his own federal credit union bank account and gave it to his sister after checks were deposited into his account at a different federal credit union in Illinois that were later determined to have been returned unpaid?

Appellant's Brief, at 4-5.

When reviewing a challenge to the sufficiency of evidence, our standard of review is well settled:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth may not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 904 A.2d 925, 931 (Pa. Super. 2006) (citations omitted).

The crime of receiving stolen property is defined as follows:

**§ 3925. Receiving stolen property**

(a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a). To obtain a conviction for the offense of receiving stolen property, the Commonwealth must "prove beyond a reasonable doubt that (1) the property had been stolen, (2) the accused received the property, and (3) the accused knew or had reasonable cause to know that it had been stolen." *Commonwealth v. Worrell*, 419 A.2d 1199, 1201 (Pa. Super. 1980). In making its case, the prosecution may sustain its burden by means of circumstantial evidence. *Id. See also Commonwealth v. Nero*, 58 A.3d 802, 807 (Pa. Super. 2012).

Sherrill contests the sufficiency of the evidence with respect to the "guilty knowledge" element of the crime. He argues that the Commonwealth did not prove beyond a reasonable doubt that Sherrill either intentionally received stolen property or believed that the property was probably stolen. This Court has commented on the basic requirement to satisfy this element as follows:

Importantly, the Legislature expressly defined the required mental state as "knowing" or "believing." Because the

Legislature excluded mental states such as recklessness, negligence, or naïveté about the stolen status of the property, those mental states are insufficient. This reasoning is consistent with the common recognition that penal statutes are to be strictly construed. Thus, courts may not hold that a less culpable mental state satisfies a criminal statute where the statute demands proof of the more culpable mental state.

***Commonwealth v. Newton***, 994 A.2d 1127, 1131 (Pa. Super. 2010).

The Commonwealth correctly notes that the guilty knowledge required here may be inferred from circumstantial evidence. ***See*** Commonwealth's Brief for Appellee, at 8; ***Commonwealth v. Pruitt***, 951 A.2d 307, 314 (Pa. 2008); ***Commonwealth v. Newton***, 994 A.2d 1127, 1132 (Pa. Super. 2010). Notably, in ***Commonwealth v. Williams***, 362 A.2d 244 (Pa. 1976), the Pennsylvania Supreme Court held that "a permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing on an accused's right of due process or his right against self-incrimination." ***Id.*** at 248–49 (footnotes omitted).

***Williams*** involved the defendant's unexplained possession of a stolen car just twelve days after its theft. In reversing this Court's decision and reinstating the trial court's judgment on the conviction of receiving stolen property, the ***Williams*** Court stated: "Circumstantial evidence from which guilty knowledge can be inferred is sufficient to sustain a conviction if the underlying circumstantial evidence is sufficiently strong to support the inference beyond a reasonable doubt." ***Id.*** at 248. ***Cf. Commonwealth v. Robinson***, 128 A.3d 261 (Pa. Super. 2015) (en banc) (evidence insufficient to support jury inference that defendant knew or had reason to believe

handgun was stolen; neither lack of registration nor lack of license to carry weapon was circumstantial evidence of guilty knowledge since, under Pennsylvania law, neither is required to own handgun); *Commonwealth v. Foreman*, 797 A.2d 1005, 1012 (Pa. Super. 2002) (mere possession of stolen property is insufficient to prove guilty knowledge; Commonwealth must introduce other evidence, circumstantial or direct, that demonstrates defendant knew or had reason to believe property was stolen."); *Commonwealth v. Matthews*, 632 A.2d 570, 571 (Pa. Super. 1993) ("[T]here must be additional evidence [beyond mere possession], circumstantial or direct, which would indicate that the defendant knew or had reason to know that the property was stolen.").

Here, the Commonwealth contends it introduced sufficient evidence to support an inference that Sherrill in fact knew that the money was stolen. We agree.

Sherrill made no inquiry after his sister told him her "friend" would be depositing significant sums of money into his account. Sherrill knew that his sister was unemployed at the time. From December 26, 2013 to December 30, 2013, deposits were made into Sherrill's account, and Sherrill made withdrawals the same day the deposits were made. This activity supports the "recency plus lack of explanation" inference. *Williams*, *supra*. Notwithstanding Sherrill's claim of naïveté, the trial court, sitting as factfinder, could properly draw the inference of guilty knowledge from the circumstantial evidence presented, *id.*, and it was free to conclude that

Sherrill's claim of no knowledge was not credible. **Brown**, **supra**. Having reviewed the record, particularly the notes of testimony from the trial, mindful that we may not re-weigh the evidence and substitute our judgment for that of the trial court, sitting as fact-finder, and viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we agree with the trial court that the Commonwealth presented sufficient evidence to support its conclusion that Sherrill knew, or had reason to believe, that the money he withdrew from his account was probably stolen. **Id.**

Next, Sherrill claims that the court erred in allowing the Commonwealth to introduce into evidence: (1) a letter written by Banks to the Philadelphia Police Department; and (2) copies of checks deposited into SD, the federal credit union in Chicago, Illinois. Sherrill claims this evidence was inadmissible hearsay because: (1) Banks prepared the letter after conducting an investigation into Sherrill's account and not in the regular course of business; and (2) Banks was not the custodian of records for the Illinois credit union. Thus, Sherrill asserts that the documents could not be admitted under the business records exception to the hearsay rule.

Evidentiary rulings are committed to the sound discretion of the trial court. This Court will not reverse absent a clear abuse of that discretion. **Commonwealth v. Wood**, 637 A.2d 1335 (Pa. Super. 1994). Pennsylvania Rule of Evidence 801(c) defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted."

Pa.R.E. 801(c). Hearsay evidence is inadmissible under Pa.R.E. 802. With respect to the business records exception, admissibility is governed by the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108. Section 6108 provides, in relevant part:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

*Id.* Pennsylvania Rule of Evidence 803(6) is also applicable to this matter and provides:

> (6) Records of a Regularly Conducted Activity. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> > (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
> >
> > (C) making the record was a regular practice of that activity;
> >
> > (D) all these conditions are shown by the testimony of the custodian *or another qualified witness*, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> >
> > (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803 (emphasis added).

Here, the Commonwealth established that Banks was the Custodian of Records for the AHF credit union, where Sherrill had his account. The Commonwealth also established that Banks was able to authenticate records pertaining to his AHF account and, as noted above, AHF and SD participated in "shared branching." Banks testified that it was her job to "maintain the daily record keeping of our member accounts" and that those records were maintained in the regular course of business. N.T. Trial, 7/9/15, at 19-20. Banks received records from the representative of the SD credit union in the course of investigating Sherrill's account. She testified that although the fraudulent checks were deposited into ATMs owned by SD, they were deposited into Sherrill's account, which belonged to AFH. *Id.* at 33. Because the "check-kiting" scheme involved multiple transactions in the two credit unions, but through Sherrill's one account that was accessible at SD in Illinois, the trial court properly determined that Banks was qualified to testify as to these transactions. *See* Pa.R.E. 803(6)(D).

Additionally, in the course of investigating Sherrill's account, Banks prepared a letter summarizing the fraudulent transactions with attached copies of the deposits, which she later forwarded to the Philadelphia Police Department. Sherrill claims this letter was inadmissible because it was not a business record and it was prepared in anticipation of litigation. However, the substance of that letter, a summary of Sherrill's account and copies of the checks deposited at SD, were, as analyzed above, properly

authenticated. Even if the letter itself were inadmissible, the trial judge, sitting as factfinder, is presumed to disregard inadmissible evidence. **See Commonwealth v. Harvey,** 526 A.2d 330, 333 (Pa. 1987) (where criminal case is tried before judge sitting without jury, judge is presumed capable of disregarding inadmissible evidence); **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014). Accordingly, we find no clear abuse of discretion. **Wood**, **supra**.

In his final issue, Sherrill claims his conviction of Receiving Stolen Property was against the weight of the evidence. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. **See Commonwealth v. Morales**, 91 A.3d 80 (Pa. 2014); **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014).

In the instant case, Sherrill has not demonstrated that the trial court committed a palpable abuse of discretion by rejecting his request for a new trial based on the weight of the evidence. Sherrill simply reiterates the contention he had made in the court below, and that he repeats in his sufficiency claim, that he did not know the money he was withdrawing from his account was stolen. The trial court, properly exercised its discretion in evaluating the circumstantial evidence presented, properly chose to discredit Sherrill's testimony, and properly concluded that the verdict did not shock its

conscience. *See **Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) ("The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses."). We find no abuse of discretion. ***Morales***, ***supra***.

For the reasons set forth above, we conclude that Sherrill's claims are meritless and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2016