**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOAN HELDIBRIDLE | |
| Appellant | No. 922 WDA 2016 |

Appeal from the Judgment of Sentence Dated May 18, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000157-2014

BEFORE:  OLSON, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MAY 12, 2017**

Appellant Joan Heldibridle appeals from the judgment of sentence imposed after she was convicted of driving under the influence and two summary traffic offenses.  We affirm.

Appellant was arrested on October 17, 2013, and subsequently charged with two provisions of the Vehicle Code prohibiting driving under the influence of alcohol, 75 Pa.C.S. § 3802: specifically, Section 3802(a)(1), which prohibits driving after imbibing sufficient alcohol to render an individual incapable of safely driving; and Section 3802(a)(2), which prohibits driving after imbibing sufficient alcohol to cause a blood alcohol

_____

[*] Retired Senior Judge assigned to the Superior Court.

concentration between 0.08 and 0.10.[1] Appellant was also charged with disregarding a single traffic lane, careless driving, failing to wear a seatbelt, and public drunkenness.[2]

At a bench trial held on March 30, 2016, Trooper Scott Urban testified as follows: on the night of October 17, 2013, he was on patrol in the area of State Route 22 eastbound at State Route 219 in Cambria County. In that capacity, he stopped Appellant after he saw her leave her lane three times and then swerve within her lane. As he approached Appellant's car, Trooper Urban smelled alcohol. Appellant was not wearing a seatbelt. Trooper Urban asked Appellant if she had been drinking, and she responded that she had. Appellant told the trooper that she had been eating chicken wings, and that was probably why she had been driving poorly. N.T., 3/30/16, at 6-10, 23.

Trooper Urban administered field sobriety tests, specifically the horizontal gaze nystagmus (HGN) test,[3] the one-legged stand, and the nine-

_____

[1] This was Appellant's second DUI offense.

[2] 75 Pa.C.S. §§ 3309(1), 3714(a), 4581(a)(2)(ii), and 18 Pa.C.S. § 5505.

[3] Appellant objected to admission of evidence regarding the HGN test on the ground that the test had been "disproven" and therefore was inadmissible. *See* N.T., 3/30/16, at 12. The trial court did not expressly sustain or overrule the objection. The court acknowledged that because this was a bench trial and the objection went to the admissibility of proffered evidence, "I can disregard it if --." N.T., 3/30/16, at 12. Defense counsel then interrupted and said, "I understand. I just wanted to make sure I make the objection because I don't know if I'm precluded if I don't object to it." *Id.* *(Footnote Continued Next Page)*

step walk and turn. Appellant failed all of these tests. Appellant told the trooper that she was used to wearing high heels and had trouble with the sobriety tests because she was wearing flat shoes. Trooper Urban tried four times to administer a portable breath test, but Appellant was unable or unwilling to cooperate. When Trooper Urban tried to arrest Appellant, she fled over an embankment. Trooper Urban returned Appellant to the police car and took her to Conemaugh Memorial Medical Center, where she consented to a blood draw. Testing of the blood sample revealed a blood alcohol concentration of 0.084. N.T., 3/30/16, at 10-23.

Trooper Urban's dashboard camera recorded the events leading up to Appellant's arrest. That video was displayed by the Commonwealth and offered into evidence by Appellant. *See* N.T., 3/30/16, at 9, 18-20, 32, 49; Ex. D-1. After watching the video at trial, Trooper Urban testified that Appellant appeared to have slurred speech. N.T., 3/30/16, at 29.

Gwen Yutzy, the medical laboratory technician who tested Appellant's blood sample, testified regarding Conemaugh Medical Center's "chain of custody" form, Commonwealth Ex. C. She testified that the form stated that phlebotomist Dave Rich drew the specimen from Appellant at 11:31 p.m. and gave it to Yutzy at 11:46 p.m. Appellant objected to testimony

_(Footnote Continued)_ ⸻

As discussed in the text, counsel made no other objection to admissibility of the test.

- 3 -

regarding Rich's actions, "unless he's here to testify."[4] The Commonwealth argued that Exhibit C was a business record, and the trial court overruled Appellant's objection. N.T., 3/30/16, at 59-62. Yutzy also testified regarding Commonwealth Exhibit D, a computer printout of the results of Appellant's blood test. Appellant objected based on a lack of foundation; that objection was overruled. *Id.* at 63-64.

After Yutzy's testimony, the Commonwealth moved for admission of Exhibits A, B, C, and D (Chemical Testing Warnings form; Conemaugh Medical Center blood draw form; Conemaugh Medicolegal Specimen Transmission Record (chain of custody form); and lab test results). Appellant objected. When asked the basis for the objection, Appellant responded: "Chain of custody, Your Honor. Objection to the chain of custody as to offering – although it's been testified to, unless – and if he's resting, they haven't offered the person who drew the blood." N.T., 3/30/16, at 79. The trial court overruled the objection and explained that chain of custody goes toward the weight of the evidence, rather than its admissibility. *Id.* The Commonwealth then rested.

Appellant testified in her own defense. She admitted that when she stopped on her way home from work to pick up food, she drank "some" alcohol. She denied being intoxicated. She said that immediately before

_____

[4] Dave Rich did not testify at trial.

she was stopped her box of wings had started to slide off the passenger seat, and when she reached over to grab it, she turned the steering wheel. She testified that the smell in her car was of garlic and barbeque sauce, not alcohol. She also contended that because she was wearing flip-flops while driving, and she was used to wearing shoes with high heels, she was uncomfortable standing outside of the car. She admitted that she fled after Trooper Urban told her she was under arrest, but said she only went about ten feet. N.T. 3/30/16, at 87-100.

The trial court found Appellant guilty of DUI under Section 3802(a)(1) (incapable of driving safely), failing to drive within a single traffic lane, and failing to use a seatbelt. The court found Appellant not guilty of DUI under Section 3802(a)(2) (alcohol concentration between 0.08 and 0.10), careless driving, and public drunkenness.

On May 18, 2016, the trial court sentenced Appellant to five days to six months' confinement, with the five days to be served on house arrest, followed by automatic parole. On June 17, 2016, Appellant filed a timely notice of appeal. On appeal, Appellant raises the following issues, as stated in her brief:

> Whether the trial court committed reversible error in admitting evidence of Appellant's performance on the horizontal gaze nystagmus (HGN) test?

> Whether the trial court committed reversible error in admitting testimony and evidence of Appellant's blood alcohol concentration?

Appellant's Brief at 6.[5]

Both of Appellant's issues challenge evidentiary rulings made by the trial court. Our standard of review for such evidentiary claims is deferential:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (quotation marks and citations omitted), *cert. denied*, 137 S. Ct. 92 (2016).

### HGN Test

In her first issue, Appellant argues that the trial court erred in admitting Trooper Urban's testimony regarding her performance on the HGN test because the Commonwealth did not establish an adequate foundation. Specifically, she claims the Commonwealth did not offer testimony that "HGN testing had gained general acceptance in the scientific community, particularly in the field of medical science represented by ophthalmology." Appellant's Brief at 20 (quoting *Commonwealth v. Stringer*, 678 A.2d

---

[5] We note with disapproval that although the reproduced record contains a copy of the trial court's opinion, Appellant failed to append a copy of the opinion to her brief, as required by Pennsylvania Rule of Appellate Procedure 2111(b).

1200, 1202 (Pa. Super.), **appeal denied**, 686 A.2d 1310 (Pa. 1996)). Appellant asserts that the admission of evidence regarding the HGN test was not harmless because the other evidence of her guilt was not overwhelming. This issue is waived.

Our rules of appellate procedure provide that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "This requirement bars an appellant from raising 'a new and different theory of relief' for the first time on appeal." **Commonwealth v. Phillips**, 141 A.3d 512, 522 (Pa. Super.) (citation omitted), **appeal denied**, 425 MAL 2016 (Pa. Nov. 22, 2016). The Supreme Court of Pennsylvania has explained the rationale behind this principle:

> Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

***Dilliplaine v. Lehigh Valley Trust Co.***, 322 A.2d 114, 116-17 (Pa. 1974) (footnotes omitted).

At trial, Appellant did object to admission of the HGN test, but her objection was not based on lack of foundation. Rather, Appellant's objection was that the HGN test is never admissible because the test "has been disproven." ***See*** N.T., 3/30/16, at 12 ("But the nystagmus test has been disproven, and I don't believe it's admissible even for a nonjury trial").[6] Thus, rather than arguing that there was a lack of a foundation that, if provided, would permit admission of the evidence, she argued, apparently as a matter of law, that the test is never admissible at all. ***See id.*** Because Appellant did not make an objection at trial based on lack of foundation, her argument of that issue on appeal is waived. ***See Phillips***, 141 A.3d at 522; ***Coffey v. Minwax Co.***, 764 A.2d 616, 622 (Pa. Super. 2000) (foundation objection waived where the appellant objected at trial, but did not inform the court that the objection was based on a lack of foundation).

### BAC Evidence

In her second issue, Appellant argues that the trial court erred in admitting evidence regarding her blood alcohol concentration (BAC) because this evidence contained inadmissible hearsay and was "foundationally

---

[6] Appellant did not provide citations to Pennsylvania authority under which the HGN test was "disproven" or declared inadmissible as a matter of law, and she has not continued to advance that argument on appeal.

infirm." Appellant's Brief at 24. Although the trial court explicitly stated that its finding of guilt was "independent of blood alcohol testing results," Trial Ct. Op., 7/28/16, at 7, Appellant argues that this alleged error was not harmless because "[w]hen the trial court heard evidence that Appellant's BAC was measured at .084, it certainly weighed that evidence against her." Appellant's Brief at 27. We disagree.

"The trial court will be reversed only if an error in the admission of evidence contributed to the verdict." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017). In a bench trial, the trial court, acting as the fact-finder, "is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Id.* (citation omitted). "Thus we will not *assume* that a verdict rendered by a jurist was influenced by [inadmissible evidence;] rather it must be demonstrated by the record that the verdict was indeed the product of that corrupt source." *Commonwealth v. Harvey*, 526 A.2d 330, 333 (Pa. 1987) (emphasis in original). Here the trial court has explicitly stated that the verdict was not a product of the blood testing results, and Appellant has provided no evidence to the contrary. Therefore, even if the BAC evidence was improperly admitted, we presume that the trial court in this bench trial disregarded it in reaching its verdict and will not reverse on that basis. *See McFadden*, 156 A.3d at 309; *Harvey*, 526 A.2d at 333.

Appellant's reliance on *Commonwealth v. Leighty*, 693 A.2d 1324, 1329 (Pa. Super. 1997), in which this Court presumed that the jury weighed

- 9 -

inadmissible evidence of the defendant's BAC, is misplaced.  Critically, unlike this case, **Leighty** involved a jury trial.  **See Harvey**, 526 A.2d at 333 (stating that if verdicts were rendered by lay jury, they could not stand, but affirming because verdicts were rendered by judge).

Accordingly, having discerned no reversible error, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/12/2017