J-S18036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUAN ABEL SANTIAGO | : | |
| | : | |
| Appellant | : | No. 907 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 15, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002180-2016

BEFORE: KUNSELMAN, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED: MAY 18, 2020**

Appellant Juan Abel Santiago appeals from the judgment of sentence of

life imprisonment entered on September 15, 2017, in the Court of Common

Pleas of York County following a jury trial resulting in his murder and robbery

convictions. After careful review, we affirm.

In its Opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court detailed

the underlying facts and procedural history herein. **See** Trial Court Opinion,

filed 8/22/19, at 1-8.[1] Briefly, following a jury trial which commenced on

September 11, 2017, and concluded on September 15, 2017, Appellant was

convicted of First Degree Murder, Second Degree Murder and Robbery.[2] The

---

* Former Justice specially assigned to the Superior Court.
[1] Appellant adopts the trial court's statement of the factual and procedural
history in his appellate brief. **See** Brief for Appellant at 13-17.
[2] 18 Pa.C.S.A. §§ 2502(a); 2502(b); and 3701(a)(1)(i), respectively.

convictions arose from an incident that occurred on January 28, 2016, involving Appellant, another male, and Dontay Lowrie ("the Victim").

At the conclusion of trial, the trial court immediately sentenced Appellant to two life sentences without the possibility of parole to be served concurrently on the murder convictions, and it indicated that the Robbery conviction merged for sentencing purposes with the Second Degree Murder conviction. On September 22, 2017, Appellant filed a post-sentence motion. Following a hearing on October 13, 2017, the trial court denied the motion and permitted trial counsel to withdraw after perfecting Appellant's appeal. However, counsel filed an untimely appeal, and this Court quashed the same.

Subsequently, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act[3] wherein he sought the restoration of his direct appeal rights. Appellant's direct appeal rights were reinstated *nunc pro tunc*. New counsel was appointed and filed the instant appeal on June 3, 2019.

In the Statement of Questions Involved section of his appellate brief, Appellant raises thirteen (13) claims for this Court's review that essentially mirror those he listed in his Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b) filed on July 22, 2019.[4] Those issues are as follows:

---

[3] 42 Pa.C.S.A. §§ 9541-9545.

[4] The only claim omitted in Appellant's brief is sub-issue 1(f) from his concise statement which challenged the sufficiency of the evidence to sustain the robbery conviction. As such, he has waived this sub-claim for lack of development. ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1218 (Pa.Super.

I. Whether the Commonwealth presented sufficient evidence at trial to sustain the verdicts of guilty on the charges of murder of the first-degree, robbery, and murder of the second-degree as follows:

a. On the charge of first-degree murder, the evidence failed to establish that Defendant himself shot and killed the victim (or was the direct cause of death) where the evidence established only one shooter but two people present;

b. On the charge of first-degree murder, the evidence failed to establish that Defendant had a specific intent to kill or that it was willful, deliberate, and premeditated;

c. On the charge of second-degree murder, the evidence failed to establish that Defendant inflicted serious bodily injury upon the victim or killed him as the injuries sustained were a result of four gunshots from one gun and the Commonwealth did not establish beyond a reasonable doubt which of the two individuals shot the victim;

d. On the charge of second-degree murder, the evidence failed to establish that Defendant killed the victim while committing a robbery in that the Commonwealth failed to produce sufficient evidence that a theft occurred or that Defendant committed the theft; and

e. On the charge of second-degree murder, the Commonwealth failed to prove that there was a theft and, therefore, did not establish that the killing was in furtherance of a theft/robbery.

II. Whether the weight of the evidence is insufficient to sustain the verdicts of guilty on the charges of murder of the first-degree, robbery, and murder of the second-degree as the testimony that there were two shooters is contradicted by the Commonwealth's firearms expert who testified that all four shell casings found at

2011) (issues raised in Pa.R.A.P. 1925 concise statement not developed in appellate brief are abandoned); *see also Commonwealth v. Woodward*, 129 A.3d 480, 509 (Pa. 2015) (holding that "where an appellate brief fails to ... develop an issue in any [ ] meaningful fashion capable of review, that claim is waived[ ]").

the crime scene came from the same firearm and the victim was shot four times.

III. Whether the trial court erred in admitting conversations allegedly between Defendant and an inmate at the York County Prison where the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury?

IV. Whether the trial court erred in admitting conversations allegedly between Defendant and an inmate at the York County Prison where there was no authentication as to Defendant (or his voice) being one of the participants in the conversation?

V. Whether the trial court erred in admitting conversations between Defendant and an inmate at the York County Prison where such recordings are in violation of the Wire Tap Act (and its exceptions) and inapposite to the holding in **Commonwealth vs. Fant**, 146 A.2d 1254 (Pa. 2016)?

VI. Whether the trial court erred in admitting a letter that was not properly authenticated and where the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury?

VII. Whether the trial court erred in admitting evidence that text messages were sent or received where such records were not properly authenticated and where the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury?

VIII. Whether the trial court erred in admitting SMS Maps and voice usage maps when the maker of the maps testified that she could not positively identify where the telephone device was located and that the cell towers produced conflicting locations?

IX. Whether the trial court erred in admitting still photographs from the video surveillance which did not fairly and accurately depict the subject in the still photographs?

X. Whether the trial court erred in not allowing the Defendant to testify about his whereabouts on the day of the incident, where such testimony could have raised a reasonable doubt as to the Defendant's location at the time of the incident?

XI. Whether the trial court erred in permitting the testimony of Angelica Lowrie regarding the letter purportedly written by Defendant without proper foundation or authentication and where she had no first-hand knowledge regarding the letter?

XII. Whether the trial court erred in permitting Ms. Greene to identify Defendant as a shooter when she was previously indicated that she did not see the shooter's face and was previously unable to identify Defendant, including through a photographic line-up?

XIII. Whether the trial court erred in instructing the jury on flight and consciousness of guilt as there was insufficient evidence of flight and no instruction was requested?

Brief for Appellant at 8-13.

Appellant's initial arguments challenge the sufficiency of the evidence to sustain his convictions. According to Appellant, the Commonwealth failed to establish that he: actually shot and killed the Victim; had a specific intent to kill the Victim; inflicted serious bodily injury upon the Victim or; killed the Victim in furtherance of a theft/robbery. Brief for Appellant at 22-30.

We review these challenges to the sufficiency of the evidence mindful of our well-established standard of review:

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.
>
> In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a

reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

***Commonwealth v. Knox***, 219 A.3d 186, 195 (Pa.Super. 2019) (internal citations and quotation marks omitted).

After a review of the certified record, the trial transcripts, the briefs of the parties, the applicable law, and the well-reasoned Opinion of the Honorable Maria Musti Cook, we conclude that this issue along with its corresponding sub-issues merits no relief. The trial court set forth the relevant evidence and applicable law and concluded that the Commonwealth presented sufficient evidence to support Appellant's murder convictions. ***See*** Trial Court Opinion, filed 8/22/19, at 12-17. We agree with the sound reasoning of the trial court and adopt its analysis in resolving these claims. ***See id***.

In his second issue, Appellant challenges the weight of the evidence to sustain the murder and robbery convictions highlighting what he terms the "unreliable and tainted identification by Ms. Green and the suspect (and potentially tainted) identification by Detective Ripley."[5] Brief for Appellant at

_____

[5] Appellant does not cite to specific portions of the notes of testimony in support of this allegation. The record reveals, *inter alia*, that Detective George Ripley testified he had filed charges against Appellant in connection with an incident on April 3, 2014, at which time the Victim was shot. Appellant pled guilty to the charges, was sentenced to a prison term, and was released on December 29, 2015. Detective Ripley went on to testify regarding surveillance and still photographic evidence from which he identified Appellant running from the scene of the murder in the instant matter. N.T. Trial, Sept. 11-15, 2017, at 316-318-418. Ms. Windy Greene was the Victim's girlfriend, and she testified at length as to what she observed prior to, during, and following the shooting. ***Id***. at 121-250.

32. In addressing an appellant's weight claim, we apply the following principles:

> As a general rule, the weight of the evidence is exclusively for the fact finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. We cannot substitute our judgment for that of the finder of fact. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion.

*Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa.Super. 2005) (internal quotation marks and citations omitted).

In generally characterizing Ms. Greene's testimony as contradictory and Detective Riply's as suspect, Appellant ignores the fact that it was within the province of the jury, as the fact-finder, to make credibility determinations upon hearing their statements and observing their demeanor on the witness stand. Appellant essentially asks this Court to reweigh that testimony and reach a different conclusion, which we cannot do. *Castelhun*, *supra*. When addressing this claim in its Rule 1925(a) Opinion, the trial court stated that its sense of justice was not shocked by the jury's verdict. Trial Court Opinion, filed 8/22/19, at 18. Following our review of the record, we find no abuse of discretion.

Appellant's third, fourth, fifth,[6] sixth, seventh, eighth, ninth, eleventh and twelfth issues challenge the trial court's decision to admit certain physical and testimonial evidence at trial. Specifically, Appellant challenges the trial court's admitting: recorded conversations between Appellant and an inmate at York County Prison two days after the murder; a letter Appellant wrote to the Victim discovered after the latter's death by Angela Lowrie; text messages received by the Victim on the date of the shooting; short message service and voice usage maps; still photographs from video surveillance and; Ms. Greene's identification of Appellant from the witness stand.

It is axiomatic that the admissibility of evidence is within the sole discretion of the trial court, and this Court will reverse an evidentiary ruling only for a clear abuse of the court's discretion. ***Commonwealth v. Allison***, 703 A.2d 16, 18 (Pa. 1997). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of

_____

[6] In his fifth issue in his Statement of the Questions Invloved, Appellant states the admission of conversations between Appellant and an inmate at York County Prison violated the Wiretap Act; however, he briefly incorporates an argument in this regard in connection with his third issue in the argument section of his appellate brief which alleges the probative value of the discussions was outweighed by their prejudicial effect. We remind Appellant that the argument section of an appellant's brief must be divided into sections addressing each of the issues he lists in his statement of questions involved. Pa.R.A.P. 2116(a), 2119(a). Notwithstanding, because Appellant did include some argument concerning the Wiretap Act in his appellate brief, we will not find this issue waived for lack of development.

partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." ***Commonwealth v. Holder***, 815 A.2d 1115, 1118 (Pa. Super. 2003) (citation omitted).

Relevant evidence is generally admissible. Pa.R.E. 402. When called upon to determine the relevance of proffered evidence, the trial court must consider whether the evidence bears upon a material fact at issue in the case, and whether it tends to prove or disprove that fact. ***See Commonwealth v. Johnson***, 638 A.2d 940, 942 (Pa. 1994).

Importantly, it is well-established that claims which have not been raised in the trial court cannot be raised for the first time on appeal.

> In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction ... one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

***Thompson v. Thompson***, 963 A.2d 474, 475–476 (Pa.Super. 2008) (quoting ***Hong v. Pelagatti***, 765 A.2d 1117, 1123 (Pa.Super. 2000)); ***see also*** Pa.R.E. 103(a) (providing party may only claim error regarding admission or exclusion of evidence if he or she makes timely objection on record).

Mindful of the foregoing and upon our review of the certified record, we find the trial court's Rule 1925(a) Opinion thoroughly discusses and correctly

disposes of these issues by finding them either to be waived or meritless; therefore, we adopt the trial court's reasoning in concluding Appellant is not entitled to relief on the aforementioned claims. Trial Court Opinion, filed 8/22/19, at 18-28; 31-32.

Appellant's tenth issue asserts that the trial court erred in denying Appellant an opportunity to testify regarding his whereabouts on the day of the shooting. The trial court properly analyzed and found this claim had been waived in light of defense counsel's abandoning the alibi defense, withdrawing the question pertaining to Appellant's location at the time of shooting, and indicating a wish to "move on" during trial. Trial Court Opinion, filed 8/22/19, at 28-30, citing N.T. Trial, Sept. 11-15, 2017, at 662.

Moreover, Appellant admits in his brief that the trial court did not prohibit Appellant from presenting alibi testimony:

> However, and unfortunately for [Appellant], it appears the real error here is not that the trial judge precluded his testimony, but that his defense counsel volunteered to withdraw the question and move on in addition to agreeing to strike [Appellant's] response. (NT at 662-63). As a result, [Appellant] was precluded from offering his testimony regarding his alibi.

Brief for Appellant at 48.

To the extent Appellant suggests he had been precluded from offering alibi testimony because of trial counsel's actions, this Court generally will not consider claims pertaining to trial counsel's performance on direct appeal. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) (holding

- 10 -

that review of counsel ineffectiveness claims should be deferred until collateral review). Therefore, this issue is waived.

Finally, Appellant posits the trial court erred by giving a jury instruction on flight as consciousness of guilt because the Commonwealth presented insufficient evidence to justify such an instruction. The entirety of Appellant's argument on this point reads as follows:

> An instruction on flight/consciousness of guilt is appropriate where the evidence existed that defendant committed a crime, knew he was wanted, and fled or concealed himself. ***Commonwealth v. Lukowich***, 875 A.2d 1169, 1173 (Pa.Super. 2005)(citations omitted).
>
> In the instant matter, the only evidence presented at trial was that immediately after the shooting the two individuals fled the area on foot. (N.T. at 174-75). [Appellant] asserts that running from the crime scene is insufficient to warrant a charge of flight as consciousness of guilt. In this instance, there was no evidence to establish that [Appellant] knew he was wanted (seconds after it [sic] shooting) or that he concealed himself after the shooting.
>
> As a result, it was error for the trial court to instruct the jury that running from the scene of a shooting, without more, was consciousness of guilt. As a result of the error, [Appellant] should be awarded a new trial.

Brief for Appellant at 57.

In examining an appellant's challenge to a jury instruction on flight as consciousness of guilt, our Supreme Court has stated:

> A jury instruction is proper if supported by the evidence of record. [...W]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred.

- 11 -

*Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008) (internal citations omitted). Significantly, a reviewing court "need not determine whether or to what extent a flight instruction must be supported by evidence other than an accused's departure from the scene of the crime." *Id.*

Here, there is no dispute that Ms. Greene testified she observed from the rearview window of her vehicle two individuals, one of whom she would later identify as Appellant, who was on state parole at the time, "running down the street" immediately after the Victim was shot. N.T. Trial, Sept. 11-15, 2017, at 174-75. Based upon this evidence, the trial court gave the following instruction:

> There was evidence, including the video of the crime scene, as well as the still photos that showed two individuals—I'm sorry—that tended to show that [Appellant] fled from the scene. The credibility, weight and effect of this evidence is for you to decide.
> Generally speaking, when a crime has been committed, and a person thinks he or she is or may be accused of committing it, and he or she flees himself or herself, such flight is a circumstance tending to prove the person is conscious of guilt.
> Such flight does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though they are innocent. Whether the evidence of flight in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight.
> You may not find [Appellant] guilty solely on the basis of evidence of flight.

N.T. Trial, Sept. 11-15, 2017, at 879-80.

During trial, Ms. Greene testified that Appellant had been one of the two shooters whom she saw run from the scene immediately thereafter. *Id*. at 132-34. Accordingly, the evidence of record supported the instruction, and

the trial court's charge gave an accurate statement of the law. The court stressed that it was up to the jury to determine what weight, if any, the evidence of flight should be given, and it would not find Appellant guilty based solely on such evidence. As there was no trial court error regarding jury instructions, this issue lacks merit.

In light of all the foregoing, we affirm the trial court judgment of sentence entered on September 15, 2017. The parties are instructed to attach a copy of the Trial Court's August 22, 2019, Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/18/2020

- 13 -



**\* B A T C H \***

**Defendant-Name:**

## Juan Abel Santiago



**\* M O T I O N – P E T I T I O N – O R D E R \***

**Case Number**

**\* C P – 6 7 – C R – 0 0 0 2 1 8 0 – 2 0 1 6 \***

OTN:

**T 696107-6**

Musti Cook, Maria

**Fill in Circle - Queue Minutes to:**

☐ Adult-Probation-Q

☐ PennDOT-Q

☐ SCI-Q

☐ YCP-Prision-Q

☐ **Docketed in CPCMS**   Date:

☐ Scanned Images OK - Verified / QC'd

☐ **RE-SCAN needed**

Reason:

**RETURN TO RECORDS UNIT**

I attest and certify that as Deputy Clerk of Courts I have properly Serviced and Docketed the documents related to this case action and have verified the completeness and image quality of the scanned documents.

Signature or Stamp - Deputy Clerk of Courts

## Georgine Keiser - York County Clerk of Courts

L4

541991

Thursday, August 22, 2019 11:04:50 AM

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY,
PENNSYLVANIA CRIMINAL DIVISION**

COMMONWEALTH OF         :         NO. CP-67-CR-2180-2016
PENNSYLVANIA             :
                         :
          V.            :
                         :
JUAN ABEL SANTIAGO,     :
Defendant               :

2019 AUG 22 AM 10: 56
CLERK OF COURTS
RECEIVED YORK COUNTY JUDICIAL CENTER

## STATEMENT OF LOWER COURT
## PURSUANT TO PA.R.A.P. 1925(a)

**AND NOW**, this _21st_ day of August 2019, upon receipt of a notice that an

appeal has been filed in this matter, and in consideration of the Concise Statement of Errors

Complained of on Appeal filed on behalf of Juan Abel Santiago (hereinafter, "Defendant"),

by and through his attorney, David E. Cook, Esquire, the undersigned files this statement

pursuant to PA.R.A.P. 1925(a).

Additionally, the reasons for this Court's denial of Defendant's post-sentence

motion can be found herein.

### Factual and Procedural History

On January 28, 2016, at approximately 2:10 p.m., the York City Police Department

responded to the area of Park Street and Park Place, in the City of York, to investigate a

report of shots fired. Upon arrival, officers did not locate a victim but soon received

information that a gunshot wound victim had been recently transported by private vehicle to

York Hospital. The victim, later identified as Dontay Lowrie, also known as "Mills,"

(hereinafter, "the victim"), succumbed to his injuries. Dr. Samuel Land, forensic pathologist, performed an autopsy the following day and determined that multiple gunshot wounds caused the victim's death.

While awaiting news of the victim's condition in the hospital's emergency bay area, the distraught individual who had moments ago transported the victim to the hospital in a gray-colored 2011 BMW sedan, identified herself as Windy Greene to York City Police Officer Timothy Clymer who happened to be present at the hospital tending to other business matters. Further, Ms. Greene indicated to Officer Clymer that she was the victim's girlfriend and an eyewitness to the shooting.

After waiting in the emergency area for approximately an hour, Detective Spence of the York City Police Department requested officers transport Ms. Greene from the hospital to the police station for an interview. Accordingly, Ms. Greene indicated that on the day of the shooting, she and the victim had been washing clothes at a laundromat when the victim received a call on Ms. Greene's cell phone from a man named "Ni" requesting that the victim meet Ni on Park Street to pick up money. The couple obliged Ni's request and set out together in Ms. Greene's car to meet Ni at the agreed upon location. After waiting several minutes for Ni to arrive, the couple surmised they were in the wrong location and traveled to a different area of Park Street closer to Roosevelt Avenue where Ms. Greene pulled over as close to the curb as the large heap of snow would permit. Ms. Greene remained seated in the driver's seat while the victim remained seated in the passenger seat holding Ms. Greene's cell phone in his lap while they anticipated Ni's arrival.

2

A minute or so passed when Ms. Greene noticed in her rearview mirror a male approaching her vehicle on the passenger side. Ms. Greene was familiar with Ni and determined that the male approaching her vehicle was not Ni. The unknown male walked past her vehicle then reversed his step, approached the front passenger side, glanced downwardly at the victim and exchanged pleasantries with him. The victim then opened the car door and readjusted his legs to plant his feet onto the street while continuing to converse with the male. Ms. Greene could only see the male's side profile as his face was partially obscured because he wore a hooded sweatshirt with the hood tightly drawn around his face. She described his build as thick, his complexion as light and his race as African American.

As the victim and unknown male conversed, Ms. Greene observed through her rearview mirror a second unknown male approaching her vehicle along the passenger side. She was able to view the second male better than the first and described him as tall with a thin build, a light complexion and long-shaped face. This male also wore a hooded sweatshirt; however, the hood was not drawn as tightly around his face as the first male's hood. When the second male joined the first male at the opened front passenger car door, the victim stood up to greet him with a handshake, but the second male rebuffed him with the explanation that the victim "snitched" on him. The victim immediately implemented damage control and insisted that he never "ratted" on the second male and that he would never "snitch" because he regarded the male as a brother whom he loved -- an assertion which the second male flat-out rejected.

3

As tensions escalated, the second male forcibly shoved the victim back down into a seated position in the vehicle's front passenger seat and together with his confederate, cornered him. The first male displayed a firearm then both males began patting the victim down, rifling through his pockets, emptying the glove compartment and demanding to know what valuables the victim had on his person. During the assault, the second male produced a firearm. At one point, the first male pointed his firearm at Ms. Greene and inquired of the victim what, if any, valuables she may have on her person.

Ms. Greene told the attackers that neither she nor the victim had any valuables in their possession and that she would simply like to go home. At the direction of the first male, Ms. Greene removed her keys from the ignition then instinctively elevated her hands. After a brief pause, the males fired upon the victim, striking him four times. Meanwhile, Ms. Greene stared straight ahead, opening and closing her eyes intermittently until the gunfire ceased. During the shooting, the victim had attempted to take cover by slithering into the back seat. On the victim's command to drive, Ms. Greene set out for York Hospital, but not before observing in her rearview mirror the attackers fleeing in the direction from whence they had come. Residential surveillance cameras also captured images of the assailants fleeing.

After listening to Ms. Greene's harrowing ordeal, Detective Spence directed another officer to immediately generate four 8-person photo arrays which included a photo of Defendant, other men similar in appearance to Defendant, and additional subjects randomly selected as a result of intelligence gathered during police neighborhood canvasing and

4

anonymous tip calls. While Ms. Greene indicated that Defendant's photograph in the photo spread shared similar physical attributes to the second male, she was unable to positively identify Defendant as the second male.

At the conclusion of the interview, Ms. Greene visited the victim's family to inform them of his passing. She was not able to call them because her cell phone, which was last in the victim's possession, was missing. Based upon information Ms. Greene provided, a family member showed her photographs obtained from Facebook which jogged Ms. Greene's memory to where she recognized Defendant as the second shooter. The following morning, Ms. Greene returned to the police station and identified Defendant from a photo array.

As detectives progressed with their investigation, it was discovered that on January 18, 2016, Defendant traveled to York County Prison, signed the visitor's log, and met face-to-face with an inmate named Jalon Moore. The inmate visit took place in the visiting room area. Defendant and Moore, separated by a glass partition, spoke to each other through a telephone-like handset. During the visit, Defendant vividly recalled to Moore how he and another fellow named "Sharp" recently conspired to kill the victim whom they spotted in traffic. Defendant stated to Moore that while he was garbed in his hoodie and gloves in preparation of carrying out the victim's execution, he and Sharp were unsuccessful because the victim detected their presence and ran a red light to flee from them. Additionally, detectives compiled cell phone and mapping data to determine Defendant's location at the time of the shooting.

On February 1, 2016, the Commonwealth charged Defendant with the following crimes: (1) Murder of the First Degree under 18 PA. CONS. STAT. § 2502(a); (2) Robbery under 18 PA. CONS. STAT. § 3701(a)(1)(i); and (3) Murder of the Second Degree under 18 PA. CONS. STAT. § 2502(b). Defendant was formally arraigned on May 6, 2016. George Margetas, Esquire represented Defendant during trial proceedings. On August 24, 2016, the Commonwealth filed a Motion to Admit Evidence of Prior Bad Acts. Defendant filed a counseled response and *Omnibus* Pre-trial Motion on August 31, 2016, after which the trial court convened a hearing on October 21, 2016.

Following a jury trial on September 11, 2017, through September 15, 2017, the jury unanimously convicted Defendant of all counts and he was immediately sentenced to concurrent mandatory terms of life imprisonment for Counts 1 and 3. Count 2 merges with Count 3 for sentencing purposes.

Defendant filed a Post-Sentence Motion on September 28, 2017, challenging the weight and sufficiency of evidence, which this court denied by Order on October 18, 2017. On November 20, 2018, Defendant, by and through his counsel, filed an **untimely** Notice of Appeal to the Superior Court after which this court granted counsel's Petition to Withdraw. This court next appointed Thomas Kelley, VI, Esquire, to represent Defendant at the appellate stage. On November 22, 2017, this court issued an order directing Defendant to file a concise statement pursuant to PA.R.A.P. 1925(b). This court granted several of Defendant's informal requests for enlargements of time within which to file the concise statement.

6

On January 30, 2018, the Superior Court dismissed the appeal for Defendant's failure to file a docketing statement. The appeal was re-instated by the Superior Court on March 14, 2018. This court issued its first 1925(a) Statement on April 12, 2018, indicating that Defendant's failure to file a 1925(b) Statement precluded this court from authoring a statement pursuant to PA.R.A.P. 1925(a).

Attorney Kelley filed a "*Nunc Pro Tunc* Statement of Matters Complained of on Appeal" on April 16, 2018. Defendant's April 6, 2018, request for official transcription of the trial notes of testimony was completed on May 24, 2018. Defendant's concise statement challenged the weight and sufficiency of evidence adduced at trial and the trial court's admission of certain evidence.

On August 31, 2018, the trial court authored its PA.R.A.P. 1925(a) Statement; however, on January 16, 2019, the Superior Court quashed Defendant's appeal due to Attorney Margetas filing an untimely notice of appeal. On February 27, 2019, Defendant, *pro se*, filed a Motion for Collateral Relief under the Post-Conviction Relief Act, codified at 42 PA. CONS. STAT. § 9541 *et. seq.*

On March 1, 2019, the PCRA Court appointed David E. Cook, Esquire, to represent Defendant in his PCRA action. On May 2, 2019, Attorney Cook filed a *Stipulation* indicating that neither he nor the Commonwealth was opposed to the PCRA Court reinstating Defendant's appeal rights *nunc pro tunc* on the grounds of ineffective assistance of counsel.

On May 3, 2019, the PCRA Court issued an order reinstating Defendant's appeal rights *nunc pro tunc* and directed Defendant to file a notice of appeal within thirty (30) days

7

of the entry of the order. On June 3, 2019, Defendant, by and through his counsel, filed a notice of appeal. After twice requesting extensions of time within which to file his court-ordered concise statement of errors pursuant to PA.R.A.P. 1925(b), Defendant, by and through his counsel, filed a concise statement on July 22, 2019, alleging the following errors:

(I)     Whether the Commonwealth presented sufficient evidence at trial to sustain the verdicts of guilty on the charges of Murder of the First Degree, Robbery, and Murder of the Second Degree with respect to the following elements of the offenses:

   a. On the charge of first-degree murder, the evidence failed to establish that Defendant himself shot and killed the victim (or was the direct cause of death) where the evidence established only one shooter but two people present;

   b. On the charge of first-degree murder, the evidence failed to establish that Defendant had an [sic] specific intent to kill or that it was willful, deliberate, and premeditated;

   c. On the charge of second-degree murder, the evidence failed to establish that Defendant inflicted serious bodily injury upon the victim or killed him as the injuries sustained were a result of four gunshots from one gun and the Commonwealth did not establish beyond a reasonable doubt which of the two individuals shot the victim;

   d. On the charge of second-degree murder, the evidence failed to establish that Defendant killed the victim while committing a robbery in that the Commonwealth failed to produce sufficient evidence that a theft occurred or that Defendant committed the theft;

   e. On the charge of second-degree murder, the Commonwealth failed to prove that there was a theft and, therefore, did not establish that the killing was in furtherance of a theft/robbery; and

   f. On the charge of robbery, the Commonwealth failed to produce sufficient evidence that a theft occurred or that Defendant (or even co-defendant) committed the theft: simply because the cell phone was missing or whereabouts unknown does not equate to a theft or that either defendant possessed the cell phone).

8

(II) Whether the weight of the evidence is insufficient to sustain the verdicts of guilty on the charges of murder of the first-degree, robbery, and murder of the second-degree as the testimony that there were two shooters is contradicted by the Commonwealth's firearms expert who testified that all four shell casings found at the crime scene came from the same firearm and the victim was shot four times?

(III) Whether the trial court erred in admitting conversations allegedly between Defendant and an inmate at the York County Prison where the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury?

(IV) Whether the trial court erred in admitting conversations allegedly between Defendant and an inmate at the York County Prison where there was no authentication as to Defendant (or his voice) being one of the participants in the conversation?

(V) Whether the trial court erred in admitting conversations between Defendant and an inmate at the York County Prison where such recordings are in violation of the Wire Tap Act (and its exceptions) and inapposite to the holding in *Commonwealth v. Fant*, 146 A.2d 1254 (Pa. 2016)?

(VI) Whether the trial court erred in admitting a letter that was not properly authenticated and where the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury?

(VII) Whether the trial court erred in admitting evidence that text messages were sent or received where such records were not properly authenticated and where the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury?

(VIII) Whether the trial court erred in admitting SMS Maps and voice usage maps when the maker of the maps testified that she could not positively identify where the telephone device was located and that the cell towers produced conflicting locations?

9

(IX)     Whether the trial court erred in admitting still photographs from the video surveillance which did not fairly and accurately depict the subject in the still photographs?

(X)      Whether the trial court erred in not allowing the Defendant to testify about his whereabouts on the day of the incident, where such testimony could have raised a reasonable doubt as to the Defendant's location at the time of the incident?

(XI)     Whether the trial court erred in permitting the testimony of Angelica Lowrie regarding the letter purportedly written by Defendant without proper foundation or authentication and where she had no first-hand knowledge regarding the letter?

(XII)    Whether the trial court erred in permitting Ms. Greene to identify Defendant as a shooter when she was (sic) previously indicated that she did not see the shooter's face and was previously unable to identify Defendant, including through a photographic line-up?

(XIII)   Whether the trial court erred in instructing the jury on flight and consciousness of guilt as there was insufficient evidence of flight and no instruction was requested?

## Discussion

Defendant's claims challenge the sufficiency of the evidence presented to the jury, the weight of the evidence presented to the jury, the trial court's discretion in admitting certain evidence, and the trial court's discretion in charging the jury on flight and consciousness of guilt.

Regarding Defendant's challenge to the sufficiency of the evidence, the evidence must be reviewed in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations, footnotes, and quotation marks

10

omitted). Where the evidence offered to support the verdict contradicts the physical facts, contravenes human experience and the laws of nature, the evidence is insufficient as a matter of law. Id. Evidence is sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Id.

Defendant's claim challenging the weight of the evidence is reviewed based on the following standard:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Widmer, 744 A.2d at 751-52.

Defendant's claims challenging the admission of evidence are reviewed under a scope of deference. Commonwealth v. Baker, 963 A.2d 495, 504 (Pa. Super. 2008) (internal citations and quotations omitted). It is firmly established that questions concerning the admissibility of evidence lie within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion such as manifestly unreasonable judgment, misapplication of law, or action as result of partiality, prejudice, bias or ill will. Id.

11

Lastly, Defendant's claim challenging the trial court's discretion in charging the jury on flight/consciousness of guilt is also viewed under a scope of deference as the trial court is given wide latitude in how it phrases instructions to the jury so long as the instructions are presented accurately, adequately, and clearly. Commonwealth v. Thoeun Tha, 64 A.3d 704, 714 (Pa. Super. 2013).

Defendant's thirteen (13) assignments of error contained in his concise statement are addressed below *seriatim*.

**I.    WHETHER THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE AT TRIAL TO SUSTAIN THE VERDICTS OF GUILTY ON THE CHARGES OF MURDER OF THE FIRST-DEGREE, ROBBERY, AND MURDER OF THE SECOND-DEGREE?**

Defendant challenges whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that: (1) Defendant killed Dontay Lowrie; (2) Defendant possessed the specific intent to kill; (3) Defendant inflicted serious bodily injury upon Dontay Lowrie; and (4) Defendant committed a theft.

**A. Murder of the First Degree**

The trial court instructed the jury that in order to find Defendant guilty of murder of the first degree, the jury must find that the Commonwealth proved beyond a reasonable doubt that: (1) Dontay Lowrie is dead; (2) Defendant killed Dontay Lowrie; and (3) Defendant killed Dontay Lowrie with the specific intent to kill and with malice. The evidence adduced

12

at trial was sufficient to establish that Defendant killed the victim while he shared with a confederate the specific intent to kill. Therefore, Defendant's claim is without merit.

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 PA. CONS. STAT § 2502(a). An intentional killing is a "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 PA. CONS. STAT § 2502(d). A willful, deliberate and premeditated killing is "one which is accompanied by a specific intent on the part of the perpetrator to bring about the death of the victim." Commonwealth v. Harvey, 526 A.2d 330, 333 (Pa. 1987). The element of *specific intent to kill* may be proven from the circumstances surrounding the killing. Id. at 334. When a deadly force is "knowingly applied by the actor to the person of another, the intent to take life is as evident as if the actor stated the intent to kill at the time the [deadly] force was applied." Id.

Moreover, "[i]t is well established that an accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." Commonwealth v. Spotz, 716 A.2d 580, 585 (Pa. 1998). "The least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." Commonwealth v. Murphy, 795 A.2d 1025, 1034 (Pa. Super. 2002). "Accomplice culpability is established through a two-step analysis: first, that the accomplice acted in such a way that he solicited or aided another's criminal conduct and, second, that any act was committed with the intent of promoting or facilitating

13

the crime." Id. A shared criminal intent between a principal and his accomplice may be inferred from a defendant's words, conduct, or the attendant circumstances. Spotz, 716 A.2d at 586.

Ms. Greene made an in-court identification of Defendant and testified that she was able to see Defendant's face clearly during the incident and that he was indeed the second male who approached her vehicle, accosted the victim, brandished a firearm and fired upon the victim. (N. T. Trial, September 11-15, 2017, pp. 128; 144-45.). The evidence establishes that Defendant acted in concert with his confederate and shared the specific intent to assault, rob, and kill the victim when he pushed the victim back down into Ms. Greene's car, cornered him, patted down his pockets, rifled through the vehicle's glove compartment dumping the contents, demanded money, and fired multiple shots at him. (Id., pp. 129-133; 165.). Defendant and his confederate aided each other's criminal conduct and did so with the intent of facilitating and promoting the crimes of robbery and first-degree murder. Additionally, Defendant and his confederate shot the victim in his heart, thereby inflicting deadly force upon a vital organ, (Id., pp. 414-16), a clear indication that Defendant and his confederate possessed the specific intent to kill.

Further, while evidence of prior crimes is inadmissible against a defendant at trial on a different charge, when prior criminal acts are so closely related to the crime charged that they show, *inter alia*, motive, intent, opportunity, malice, identity, or a common scheme, plan or design, the prior criminal acts are admissible. PA.R.E. 404(b). Days before the victim's murder, Defendant admitted to a York County Prison inmate how Defendant had

14

recently taken substantial steps towards executing the victim but was unsuccessful when the victim detected his presence and evaded him. (N. T. Trial, September 11-15, 2017, Exhibit S-5 – Transcript of Visit with Jalaun Moore, pp. 25-26.). This prior bad act is conclusive of Defendant's specific intent to execute the victim.

Accordingly, the evidence adduced at trial was sufficient to prove beyond a reasonable doubt that Defendant, either as the principal or the accomplice, killed the victim with the specific intent to kill.

## B. Murder of the Second Degree / Felony Murder

As the evidence was sufficient to prove beyond a reasonable doubt that Defendant inflicted serious bodily injury upon the victim while in the course of committing theft, thus resulting in a robbery and consequently felony murder, Defendant's challenge to his second-degree murder conviction is without merit.

A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 PA. CONS. STAT § 2502(b).

> The constituent element of second degree murder is the killing of a person in the course of committing a felony. It is not necessary to find [a defendant] guilty of a felony before a finding of second degree murder. If that were the case, no second degree murder verdict could be entered without first charging and finding the party guilty of the underlying felony. What is required is that the actor be found guilty of a homicide in the progress of committing a felony with sufficient evidence to establish a felony was in process and the killing occurred.

15

Commonwealth v. Munchinski, 585 A.2d 471, 483 (Pa. Super. 1990). A person is guilty of robbery, a first-degree felony, if **in the course of committing a theft**, he inflicts serious bodily injury upon another. 18 PA. CONS. STAT § 3701(a)(1)(i). An act shall be deemed "in the course of committing a theft" if it occurs in **an attempt to commit theft** or in flight after the attempt or commission. 18 PA. CONS. STAT § 3701(2). A person is guilty of theft if he unlawfully takes **or exercises unlawful control** over movable property of another with intent to deprive him thereof. 18 PA. CONS. STAT § 3921.

As discussed *supra*, Ms. Greene positively identified Defendant as one of two perpetrators who held her and the victim at gunpoint while demanding the victim's valuables, patting him down, rifling through his pockets, searching the interior of the vehicle, and dumping the vehicle's glove compartment before unloading four bullets into his person. (N. T. Trial, September 11-15, 2017, pp. 130-33.). Defendant and his confederate took substantial steps towards the commission of a theft and the jury reasonably inferred that Defendant and his confederate committed at least an attempted theft of Ms. Greene's cell phone while exercising a degree of actual or constructive possession or control of the cell phone and other movable property all while intending to deprive the victim of it. (Id., p. 135.). The perpetrators began firing upon the victim, thereby inflicting serious bodily injury, during the commission of the robbery. (Id., p. 132.). Ms. Greene's testimony supports a finding that Defendant exercised unlawful control over movable property contained within the vehicle and quite likely the cell phone which had been under the victim's control immediately preceding his encounter with Defendant and his confederate.

16

The evidence adduced at trial was sufficient to prove beyond a reasonable doubt that Defendant, either as the principal or the accomplice, killed the victim during the commission of a robbery.

## C. Robbery

As discussed *supra*, the evidence adduced at trial was sufficient to prove beyond a reasonable doubt that Defendant inflicted serious bodily injury upon the victim while committing a theft. Therefore, Defendant's claim that the evidence did not establish that a theft occurred is without merit.

**II.  WHETHER THE WEIGHT OF THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE VERDICTS OF GUILTY ON THE CHARGES OF MURDER OF THE FIRST-DEGREE, ROBBERY, AND MURDER OF THE SECOND-DEGREE AS THE TESTIMONY THAT THERE WERE TWO SHOOTERS IS CONTRADICTED BY THE COMMONWEALTH'S FIREARMS EXPERT WHO TESTIFIED THAT ALL FOUR SHELL CASINGS FOUND A THE CRIME SCENE CAME FROM THE SAME FIREARM AND THE VICTIM WAS SHOT FOUR TIMES?**

The Pennsylvania Supreme Court has held that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. 1994) (quoting Thompson v. City of Philadelphia, 493 A.2d 669, 672 (Pa. 1985)). "When evaluating the [] weight of the evidence, the factfinder is free to believe all, part or none of the evidence." Commonwealth v. Patterson, 940 A.2d 493, 500 (Pa. Super. 2007) (citations omitted).

17

Defendant characterizes the Commonwealth's evidence as contradicting without consideration that the jury appropriately weighted Ms. Greene's unequivocal testimony that there were two shooters, one of whom was Defendant. (N.T. Trial, September 11-15, 2017, pp. 132-33; 144-45.). Video surveillance evidence supports Ms. Greene's assertion that two people were involved in the shooting. (Id., pp. 510-14.). Further, the jury properly weighted Trooper Todd Neumyer's testimony that the cartridge in a revolver handgun remains in the chamber as the missile exits the barrel and that the expelled missile can be difficult to recover if it fails to strike an object. (Id., pp. 437-39.).

This court's sense of justice was not shocked by the verdict. Therefore, Defendant's second basis for appeal also fails.

### III. WHETHER THE TRIAL COURT ERRED IN ADMITTING CONVERSATIONS ALLEGEDLY BETWEEN DEFENDANT AND AN INMATE AT THE YORK COUNTY PRISON WHERE THE PROBATIVE VALUE WAS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY?

On the morning of the first day of trial, defense counsel raised an oral motion in *limine* challenging the use of recorded conversations from a face-to-face visit that occurred nine days before the victim's murder between Defendant and a York County Prison inmate, Jalon Moore, wherein Defendant admitted to conspiring and attempting to execute the victim two weeks before he actually murdered him. Defendant's claim is not preserved for appellate review because he did not make a timely and **specific** objection in his motion in *limine* or at trial. Commonwealth v. Olsen, 82 A.3d 1041, 1050 (Pa. Super. 2013) (explaining that a

18

party must make a timely and specific objection before the trial court in order to preserve a claim of error for appellate review; failure to do so results in waiver of the issue). While defense counsel objected in his oral motion in *limine* to the admissibility of the recording, he did so on the grounds of violations of the Wiretap Act, and not on the grounds that the evidence failed to survive the PA.R.E. 403 balancing test[1].

Accordingly, this issue is deemed waived.

### IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING CONVERSATIONS ALLEGEDLY BETWEEN DEFENDANT AND AN INMATE AT THE YORK COUNTY PRISON WHERE THERE WAS NO AUTHENTICATION AS TO DEFENDANT (OR HIS VOICE) BEING ONE OF THE PARTICIPANTS IN THE CONVERSATION?

Defendant's fourth claim of error is waived because he did not make a timely and specific objection at trial. Olsen, *supra*; see also PA.R.A.P. 302. When the Commonwealth introduced evidence of the prison visit, defense counsel objected, but only to the authentication of the prisoner's voice, not Defendant's. (N.T. Trial, September 11-15, 2017, pp. 528; 532-35.). Defense counsel agreed quite emphatically that the more prominent voice on the call was indeed that of Defendant. (Id., pp. 528; 532-34.). In an effort to gain clarity

---

[1] When the Commonwealth offers relevant evidence of a defendant's prior bad acts, the evidence is only admissible if the probative value of the evidence outweighs its potential for prejudice. PA.R.E. 404(b)(2). However, in the case *sub judice*, Defendant raises the reverse balancing standard pursuant to PA.R.E. 403 by claiming that the probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

19

with respect to the defense's objection, the following dialogue ensued between the court and defense counsel at sidebar:

> The Court: My question at this point, Attorney Margetas, are you planning to raise an objection that there's not a proper foundation for your client's voice? If you are, I'm going to continue to let her ask him questions.

> [Defense Counsel]: No. I mean, I wasn't going to -- not when it comes to my client's voice, no. I'm past that -- no, not at this point.

(Id., p. 534.).

Setting waiver aside, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." PA.R.E. 901(a). "An opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker." PA.R.E. 901(b)(5).

Detective Fetrow testified that he was familiar with Defendant's voice from interacting with him in relation to investigating the victim's murder. (N. T. Trial, September 11-15, 2019, pp. 527; 530.). Detective Fetrow further indicated that he had listened to several calls between Defendant and the prisoner, Mr. Moore. (Id., p. 530.). Detective Fetrow's opinion of Defendant's voice was based on hearing it firsthand and hearing it through electronic transmission during multiple calls.

Accordingly, this Court finds that Defendant's voice was properly authenticated. Defendant's claim of error fails as it is not only waived but lacks merit.

20

**V.  WHETHER THE TRIAL COURT ERRED IN ADMITTING CONVERSATIONS BETWEEN DEFENDANT AND AN INMATE AT THE YORK COUNTY PRISON WHERE SUCH RECORDINGS ARE IN VIOLATION OF THE WIRE TAP ACT (AND ITS EXCEPTIONS) AND INAPPOSITE TO THE HOLDING IN <u>COMMONWEALTH VS. FANT</u>, 146 A.2D 1254 (PA. 2016)?**

When defense counsel made his oral Motion in *limine* on the first day of trial, this court immediately recessed for the court and Commonwealth to review the cited case law, <u>Commonwealth v. Fant</u>. Upon review, it became clear to the trial court that Defendant was essentially requesting suppression of evidence, a motion that was not timely filed. However, this court allowed for testimony to be taken and conducted a suppression hearing at which time testimony was taken from Captain Shawn Rohrbaugh, an employee at the York County Prison.

This court's decision and reasoning are set forth within the transcript, distinguishing the facts of the present case from the evidence presented in <u>Fant</u>. (N.T. Trial, September 11-15, 2017, pp. 33-34.). Moreover, the Wiretapping and Electronic Surveillance Control Act (Wiretap Act), codified at 18 PA. CONS. STAT § 5701 *et. seq.*, is inapplicable to the instant case and therefore <u>Fant</u> is of no moment. For an action to be in violation of the Wiretap Act, the statements must have been intercepted. "Intercept," as defined by the Act, means "Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers." 18 PA. CONS. STAT § 5702.

21

The communications at issue in this case were not actually intercepted because the acquisition of the communications was not **contemporaneous** with their transmission. Commonwealth v. Proetto, 771 A.2d 823, 828-29 (Pa. Super. 2001). In other words, when the conversation took place between Defendant and the inmate, it was contemporaneously monitored and recorded by Global Tel Link (GTL), not the government. (N.T. Trial, September 11-15, 2017, p. 25).

Further, Defendant did not possess a legitimate expectation of privacy when he visited with the inmate. An expectation of privacy is present when the individual's conduct exhibits an actual expectation of privacy which is recognized by society as reasonable. Proetto, 771 A.2d at 830 (citing Commonwealth v. Ardestani, 736 A.2d 552, 556 (Pa. 1999)). Neither Defendant's federal nor state constitutional rights were violated when GTL relinquished the recorded conversations to the government. Defendant had no reasonable expectation of privacy because signage in the visiting area states that the visits are monitored and recorded, and an audio recording announces the same at the beginning of each visit. (N.T. Trial, September 11-15, 2017, pp. 20, 22, 26).

Assuming arguendo that an appellate court were to find that the statements were "intercepted," or that Defendant had a reasonable expectation of privacy, the recorded statements would still be admissible because both parties gave consent to the recording. Under the Wiretap Act, "it shall not be unlawful and no prior court approval shall be required under this chapter for...a person to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such

22

interception. 18 PA. CONS. STAT § 5704(4). In the case *sub judice*, both parties impliedly consented to the recording when upon hearing notice that the visit would be subject to monitoring and recording at the commencement of the visit, they forged ahead with their visit and used up every second of the 30-minute allotment. (N. T. Trial, September 11-15, 2017, Exhibit S-5 – Transcript of Visit with Jalaun Moore.).

For the forgoing reasons, Defendant's fifth claim of error fails.

**VI.    WHETHER THE TRIAL COURT ERRED IN ADMITTING A LETTER THAT WAS NOT PROPERLY AUTHENTICATED AND WHERE THE PROBATIVE VALUE WAS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY?**

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." PA.R.E. 901(a). Further, evidence may be authenticated by its distinctive characteristics namely "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." PA.R.E. 901(b)(4). A document may be authenticated by circumstantial evidence. Commonwealth v. Zook, 615 A.2d 1, 10 (Pa. 1992). Additionally, a document could even be authenticated where it contains facts known only to the sender and recipient or where an unsigned letter bears the handwritten nickname of a defendant along with contents indicating knowledge of matters familiar to both a defendant-sender and witness-recipient. Commonwealth v. Brooks, 508 A.2d 316, 318-20 (Pa. 1986).

23

Consistent with Pennsylvania jurisprudence on authentication, the letter Defendant wrote to the victim dated February 8, 2015, and postmarked February 10, 2015, was properly authenticated. The envelope was addressed to the victim Dontay Lowrie, at York County Prison, from Defendant, with the return address of Camp Hill State Correctional Institution. (N.T. Trial, September 11-15, 2017, p. 454.). The contents of the letter discuss a prior incident in which Defendant and the victim were involved, wherein a shooting occurred injuring the victim. The letter further sets forth that their relationship is changed. Based upon the total contents, Angelica Lowrie, testified that the letter came from Defendant. The letter was signed "Macaroni"; Ms. Lowrie testified that she knew Defendant by the nickname "Cheese." (Id., p. 481.). Further, Defendant elected to testify and denied that he wrote the letter. (Id., p. 658.). Defendant was extensively cross-examined regarding the similarities in the letter and Defendant's own life. (Id., pp. 670-80.). The jury had the opportunity to review the letter and weigh the witnesses' testimony to determine credibility regarding the authorship of the letter based upon its content and substance.

Moreover, evidence of prior bad acts is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. PA.R.E. 404(b)(2). With respect to conducting the probative value/unfair prejudice balancing test, "courts must consider factors such as the strength of the other crimes evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence probably will rouse the jury

24

to overmastering hostility." <u>Commonwealth v. Kinard</u>, 95 A.3d 279, 286 (Pa. Super. 2014) (citation and internal quotation marks omitted).

In the case at bar, the trial court found that the letter's probative value outweighed any danger of unfair prejudice as it was circumstantial evidence of: (1) Defendant's *motive*; (2) Defendant's *intent*; (3) Defendant's *identity* as one of the actors in the January 28th murder of the victim; (4) Defendant's *lack of mistake* in being present at the January 28th murder of the victim; and (5) Defendant's *opportunity* to kill. The court found the following excerpts from the letter Defendant wrote to the victim to be of particular probative value:

> As far as you saying you aint tell them niggas nun fr I really aint tryna hear that because I got the paperwork black & white with everything you told him...You put me in a fucked up situation. In the paperwork I got you said I was hitting back & you put youngbull name in there. So yea, I did tell niggas you was bad money...But nigga put yourself in my shoes if the situation was vice versa & you had some paper work on me saying you was shooting you would tell niggas the same thing...We can talk about this situation face to face if you want tho. I should be home soon...I aint gon be on no shit but if you force my hand than you know how I get down already. Just saying...Mark my words Im still gon drop that opp nigga tho the other one too.

(N. T. Trial, September 11-15, 2017, Exhibit 43). When conducting the probative value/unfair prejudice balancing test, the court considered evidence that the second male who approached the victim angrily accused him of being a snitch. (Id., p. 129.). The court also considered the timeline of events in that Defendant mailed the letter to the victim in February 2015 when Defendant was incarcerated as a state prisoner, Defendant was then released from state prison on December 29, 2015, Defendant then attempted to kill the victim at some point

25

before Defendant's visit with Jalaun Moore at York County Prison on January 18, 2016, and finally Defendant killed the victim on January 28, 2016.

The court concluded that the scale tipped in favor of admitting the letter. The jury was free to accept or reject the evidence of the letter and assign it the appropriate weight. As the court did not abuse its discretion in admitting the letter, Defendant's claim of error fails.

## VII. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE THAT TEXT MESSAGES WERE SENT OR RECEIVED WHERE SUCH RECORDS WERE NOT PROPERLY AUTHENTICATED AND WHERE THE PROBATIVE VALUE WAS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY?

Defendant's claim is waived as he failed to lodge a timely and specific objection before the trial court. See PA.R.A.P. 302. While Defendant objected in his *omnibus* pre-trial motion and at trial to the admission of the cell phone records, he did so only on the grounds that "it would take someone with expert knowledge to decipher the phone data… in order to form an opinion or conclusion as to what that data means, beyond what a layperson would possess." (Def's *Omnibus* Pre-trial Motion, filed August 31, 2016, pages unnumbered, averment 49.). Defendant never once objected on the grounds of a potential for unfair prejudice or lack of authentication. In fact, at a sidebar discussion, defense counsel stated that he did not "necessarily think there's a problem with [the Commonwealth] putting on the[] text messages that occurred at such and such time." (N. T., Trial, September 11-15, 2017, p. 263.). Accordingly, Defendant's claim of error is waived.

26

**VIII. WHETHER THE TRIAL COURT ERRED IN ADMITTING SMS MAPS AND VOICE USAGE MAPS WHEN THE MAKER OF THE MAPS TESTIFIED THAT SHE COULD NOT POSITIVELY IDENTIFY WHERE THE TELEPHONE DEVICE WAS LOCATED AND THAT THE CELL TOWERS PRODUCED CONFLICTING LOCATIONS?**

No error was committed by the introduction of SMS maps or voice usage maps. The error alleged by defense counsel ultimately argues weight of the evidence. Additionally, at the *omnibus* hearing conducted on October 21, 2016, defense counsel agreed that the Commonwealth could produce testimony which set forth the cell phone records so long as there were no conclusions drawn from any triangulations. (N.T. *Omnibus* Hearing, October 21, 2016, p. 19.). At trial, maps were presented that identified cell phone towers that could have been utilized for the transmission of messages from the Defendant's and victim's cell phones. No conclusions were drawn. At trial, defense counsel did an extensive and effective cross-examination that resulted in the maps utilized by the Commonwealth having no bearing on the outcome of the trial. If this court committed an error in their admission, it was harmless.

**IX. WHETHER THE TRIAL COURT ERRED IN ADMITTING STILL PHOTOGRAPHS FROM THE VIDEO SURVEILLANCE WHICH DID NOT FAIRLY AND ACCURATELY DEPICT THE SUBJECT IN THE STILL PHOTOGRAPHS?**

Detective Ripley created still photographs from surveillance cameras located on residents' properties in the vicinity of the shooting. Portions of the videos were played at trial and then still photographs extracted from the videos and marked as Commonwealth Exhibits 61-66 were utilized during testimony. The question as to whether the still

27

photographs accurately and fairly depicted the subjects therein is a challenge to the weight given to this particular evidence by the factfinder. As noted *supra*, "when evaluating the [] weight of the evidence, the factfinder is free to believe all, part or none of the evidence." Patterson, 940 A.2d at 500. Accordingly, Defendant's claim fails.

**X.  WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING THE DEFENDANT TO TESTIFY ABOUT HIS WHEREABOUTS ON THE DAY OF THE INCIDENT, WHERE SUCH TESTIMONY COULD HAVE RAISED A REASONABLE DOUBT AS TO THE DEFENDANT'S LOCATION AT THE TIME OF THE INCIDENT?**

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." Commonwealth v. Kolenda, 676 A.2d 1187, 1190 (Pa. 1996). Criminal defendants are required to provide notice of intent to present an alibi defense. PA.R.CRIM.P. 567(A). Notice is not required, however, where the defendant's testimony is the sole source of alibi evidence. PA.R.CRIM.P. 567(B). Rule 567 of the Pennsylvania Rules of Criminal Procedure states in pertinent part:

> Rule 567. Notice of Alibi Defense
>
> (A) **Notice by Defendant**. A defendant who intends to offer the defense of alibi at trial shall file with the clerk of courts not later than the time required for filing the omnibus pretrial motion provided in Rule 579 a notice specifying an intention to offer an alibi defense, and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.
>
> …
>
> (B) **Failure to File Notice**.

28

(1) If the defendant fails to file and serve the notice of alibi as required by this rule, the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, **except testimony by the defendant**, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

PA.R.CRIM.P. 567. "...[T]he testimony of the accused may, by itself, be sufficient to raise an alibi defense and entitle him to an appropriate jury instruction." Commonwealth v. Pounds, 417 A.2d 597, 602 (Pa. 1980).

While testifying on direct examination, Defendant stated that on the day of the killing, he was "with [his girlfriend]" and that they traveled "to Sam's Club" together. (N.T. Trial September 11-15, 2017, p. 662.). This testimony illustrates a sketch of Defendant in a different location from the crime scene thereby rendering it impossible for him to be the guilty party, and therefore, constitutes an alibi defense. The Commonwealth objected to the defense's line of examination and the following discourse ensued at sidebar:

[Commonwealth]: Your Honor, at this point the Defendant's going to be testifying about whereabouts other than the area of the crime, which would an [sic] amount to an alibi. We received no notice of an alibi in this case.

The Court: I knew this was coming.

[Defense Counsel]: Well, he's allowed to say where he was. **There's no one coming in to back him up. There's no alibi**.

[Commonwealth]: But, Your Honor, he's saying he was in Sam's Club, at his girlfriend's house. This is all stuff that

29

the Commonwealth could have investigated had we had notice.

The Court: It's an alibi.

[Defense Counsel]: If the Commonwealth doesn't want to go down that road when they do their direct then that's fine -- I mean, their cross on him, that's fine. **I'll withdraw the question. We'll move on**.

The Court: Attorney Margetas, do you want his last statement to be stricken?

[Commonwealth]: Yes, I would ask that.

The Court: All right.

(Id., pp. 662-63.). Defendant's counsel voluntarily abandoned the alibi defense when he expressly indicated that Defendant's testimony was not an alibi, withdrew the question, and proposed to "move on." Defendant now attempts to change course and characterize his proffered testimony as alibi evidence to avail himself of the alibi notice exception provided by PA.R.CRIM.P. 567. Defendant's failure to preserve the issue by arguing the notice exception at sidebar results in waiver of the issue on appeal. Commonwealth v. English, 667 A.2d 1123, 1126 (Pa. Super. 1995) (discussing that a party must object to errors, improprieties or irregularities at the earliest possible stage to afford the trial judge the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter).

Consequently, Defendant's claim fails; it is deemed waived and will not be discussed further on its merits.

30

**XI. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF ANGELICA LOWRIE REGARDING THE LETTER PURPORTEDLY WRITTEN BY DEFENDANT WITHOUT PROPER FOUNDATION OR AUTHENTICATION AND WHERE SHE HAD NO FIRST-HAND KNOWLEDGE REGARDING THE LETTER?**

When a party offers its opponent's own statement against the opponent, the statement meets an exception to the rule against hearsay and will be admissible. PA.R.E. 803(25)(A); see also Commonwealth v. Edwards, 903 A.2d 1139, 1158 (Pa. 2006). The letter entered into evidence was authenticated as a statement authored by Defendant and offered by the Commonwealth against Defendant. Therefore, the letter meets the exception to the rule against hearsay.

Ms. Lowrie found a letter addressed to the victim amongst his belongings in the basement, which she later provided to the police. (N.T. Trial, September 11-15, 2017, p. 451.). Having personal knowledge of the letter's appearance and content, Ms. Lowrie testified that the letter was addressed to the victim and bore Defendant's return address at Camp Hill State Correctional Institution. (Id.). She further testified that it was her belief that Defendant authored the letter based on the signature and the contents. (Id., p. 452.). Ms. Lowrie's testimony relative to the letter was constricted to her personal perceptions of the letter.

As Ms. Lowrie's testimony was based on her firsthand knowledge, not hearsay, and where foundation was laid and the letter was properly authenticated, the trial court did not

abuse its discretion in permitting Ms. Lowrie to testify about the letter Defendant wrote to the victim. Therefore, Defendant's claim of error fails.

## XII. WHETHER THE TRIAL COURT ERRED IN PERMITTING MS. GREENE TO IDENTIFY DEFENDANT AS THE SHOOTER WHEN, IN HER PRE-TRIAL INTERVIEWS, SHE STATED SHE DID NOT SEE THE SHOOTER'S FACE AND SHE FAILED TO IDENTIFY DEFENDANT IN A LINE-UP?

Defendant's last claim of error is waived because Defendant did not preserve the issue for appellate review by making a timely and specific objection at trial. Olsen, 82 A.3d at 1050; see also PA.R.A.P. 302.

From the witness stand, Ms. Greene identified Defendant as the second attacker. (N.T. Trial, September 11-15, 2017, pp. 144-45.). Defendant failed to raise a timely and specific objection challenging Ms. Greene's in-court identification of Defendant.

Consequently, Defendant's claim fails; it is deemed waived and will not be discussed further on its merits.

## XIII. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON FLIGHT AND CONSCIOUSNESS OF GUILT AS THERE WAS INSUFFICIENT EVIDENCE OF FLIGHT AND NO INSTRUCTION WAS REQUESTED?

The trial court is given wide latitude in charging the jury so long as instructions are presented accurately, adequately, and clearly. Thoeun Tha, *supra.* An instruction on flight/consciousness of guilt is appropriate where evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself. Commonwealth v. Lukowich, 875 A.2d 1169, 1173 (Pa. Super. 2005) (citation omitted).

32

In the instant case, the Commonwealth presented evidence that Defendant, a man on state parole at the time of the victim's killing, immediately fled the residential neighborhood where he killed the victim in broad daylight. (N. T. Trial, September 11-15, 2017, pp. 174-75.). Defendant believed that the victim was aware of Defendant's failed attempt to execute him just ten days prior to his murder. (N. T. Trial, September 11-15, 2017, Exhibit S-5 – Transcript of Visit with Jalaun Moore, p. 25.). The trial court's instruction to the jury on flight/consciousness of guilt was presented accurately, adequately, and clearly. (N. T. Trial, September 11-15, 2017, pp. 879-80.). Should an appellate court find that an instruction on flight was unwarranted, the error was harmless. Accordingly, Defendant's final claim of error fails.

## Conclusion

Based on the above reasons, this Court respectfully urges affirmance of this Court's judgment of sentence entered on September 15, 2017.

The Clerk of Courts is directed to provide notice of the entry of this Statement to the York County District Attorney's Office; David Everett Cook, Esquire, counsel for the Defendant; and the Defendant, Juan Abel Santiago.

BY THE COURT,

MARIA MUSTI COOK, JUDGE

33